FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Sep 30, 2019

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| TERRY L., | No. 4:18-cv-05134-SAB |
| Plaintiff, | |
| v. | **ORDER GRANTING** |
| COMMISSIONER OF SOCIAL | **DEFENDANT'S MOTION FOR** |
| SECURITY, | **SUMMARY JUDGMENT** |
| Defendant. | |

Before the Court are the parties' cross-motions for summary judgment, ECF Nos. 11 and 14. The motions were heard without oral argument. For the reasons set forth below, the Court grants Defendant's motion for summary judgment and denies Plaintiff's motion for summary judgment.

### JURISDICTION

On March 21, 2014, Plaintiff filed a Title II application for a period of disability and disability insurance benefits on November 3, 2014. Plaintiff also filed a Title XVI application for supplemental security income on November 5, 2014. In both applications, Plaintiff alleged a disability onset date of June 1, 2014. These claims were denied initially on February 19, 2015, and upon reconsideration on August 25, 2014. Thereafter, Plaintiff filed a written request for a hearing.

//

//

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 1**

On August 28, 2017, a hearing was held before an administrative law judge (ALJ). Plaintiff was present and represented by his attorney, Chad Hatfield. An impartial vocational expert was also present at the hearing.

The ALJ issued an unfavorable decision on December 18, 2017, AR 13, and the Appeals Council denied Plaintiff's request for review on June 6, 2018. AR 1. Plaintiff filed a timely appeal to the United States District Court for the Eastern District of Washington on August 18, 2018. ECF No. 1. This matter is properly before the Court under 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3).

## SEQUENTIAL EVALUATION PROCESS

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). A claimant shall be determined to be under a disability only if his impairments are of such severity that the claimant is not only unable to do his previous work, but cannot, considering the claimant's age, education, and work experiences, engage in any other substantial gainful work which exists in the national economy. 42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has established a five-step sequential evaluation process for determining whether a person meets the definition of disabled under the Social Security Act. 20 C.F.R. § 404.1520(a)(4); *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987).

At step one, the ALJ must determine whether the claimant is presently engaged in "substantial gainful activity." 20 C.F.R. § 404.1520(b). Substantial gainful activity is defined as significant physical or mental activities done or usually done for profit. 20 C.F.R. § 404.1572. If the individual is engaged in substantial gainful activity, he or she is not disabled. 20 C.F.R. § 404.1571. If not, the ALJ proceeds to step two.

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** ~ 2

At step two, the ALJ must determine whether the claimant has a severe medically determinable impairment, or combination of impairments, that significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. § 404.1520(c). If the claimant does not have a severe medically determinable impairment or combination of impairments, he or she is not disabled. If the ALJ finds the claimant does have a severe impairment or combination of impairments, the ALJ proceeds to step three.

At step three, the ALJ must determine whether any of the claimant's severe impairments "meets or equals" one of the listed impairments acknowledged by the Commissioner to be sufficiently severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(d), 404.1525; 20 C.F.R. § 404. Subpt. P. App. 1 ("the Listings"). If the impairment meets or equals one of the listed impairments, the claimant is *per se* disabled and qualifies for benefits. If not, the ALJ proceeds to the fourth step.

Before considering step four, the ALJ must determine the claimant's "residual functional capacity." 20 C.F.R. § 404.1520(e). An individual's residual functional capacity is his or her ability to do physical and mental work activities on a sustained basis despite limitations from his impairments. 20 C.F.R. § 404.1545(a)(1). In making this finding, the ALJ must consider all of the relevant medical and other evidence. 20 C.F.R. § 404.1545(a)(3).

At step four, the ALJ must determine whether the claimant's residual functional capacity enables the claimant to perform past relevant work. 20 C.F.R. § 404.1520(e)-(f). If the claimant can still perform past relevant work, he or she is not disabled. If the ALJ finds the claimant cannot perform past relevant work, the analysis proceeds to the fifth step.

At step five, the burden shifts to the Commissioner to prove the claimant is able to perform other work in the national economy, taking into account claimant's age, education, work experience, and residual functional capacity. 20 C.F.R. §

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ⅋ 3**

404.1520(g). To meet this burden, the Commissioner must establish (1) the claimant is capable of performing other work; and (2) such work exists in significant numbers in the national economy. 20 C.F.R. § 404.1560(c)(2); *Tackett v. Apfel*, 180 F.3d 1094, 1099 (9th Cir. 1999).

## STATEMENT OF FACTS

The facts have been presented in the administrative transcript, the ALJ's decision, and the briefs to this Court. Only the most relevant facts are summarized here. Plaintiff was born on July 4, 1970. AR 23. Plaintiff testifies that he quit school halfway through the tenth grade and has a fifth grade reading level. AR 45. Plaintiff alleges disability due to hip pain, coronary artery disease, COPD, sudden death syndrome, chronic back and neck pain, and sleep apnea. AR 17

## THE ALJ'S FINDINGS

**At step one**, the ALJ found that Plaintiff had not engaged in gainful activity since June 1, 2014. AR 17.

**At step two**, the ALJ found that the Plaintiff has the following severe impairments: sleep apnea; chronic obstructive pulmonary disease; substance abuse; degenerative disk disease of the lumbar and cervical spine; mild right hip dysplasia, status post replacement; and coronary artery disease. AR 17.

**At step three**, the ALJ found Plaintiff's impairments did not meet or medically equal any of the listed impairments in the listings. AR 18.

Before reaching step four, the ALJ found Plaintiff had the residual function capacity:

> "to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except he needs to be able to shift positions every 30 minutes from sitting, standing, or walking for 5 minutes while remaining at the workstation. He can frequently balance and stoop, occasionally climb stairs and ramps, kneel, crouch, or crawl, and never climb ropes, ladders, or scaffolds. He can frequently reach overhead bilaterally. He should avoid all exposure to extreme cold, heat, wetness, humidity, pulmonary irritants, such as fumes, odors, dusts, gases, and poor ventilation, except occasional exposure to

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ꝫ 4**

industrial chemicals, and he should avoid concentrates exposure to moving machinery and unprotected heights. He should have work that consists of simple, routine, repetitive tasks in works that requires minimal math, reading, or writing skills." AR 18.

**At step four**, the ALJ found Plaintiff was unable to perform any past relevant work. AR 23.

**At step five**, the ALJ asked the impartial vocational expert whether jobs existed in the national economy for an individual with Plaintiff's age, education, work experience, and residual functional capacity. The vocational expert testified that given these factors the individual would be able to perform the requirement of representative occupations, such as parking lot attendant, cashier II, and assembler small products. AR 24. As a result, the ALJ found Plaintiff was not disabled, as defined in the Social Security Act. AR 24.

## STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner is governed by 42 U.S.C. § 405(g). The scope of review under Section 405(g) is limited, and the Commissioner's decision will be disturbed "only if the ALJ's decision was not supported by substantial evidence in the record as a whole or if the ALJ applied the wrong legal standard." *Shaibi v. Berryhill*, 883 F.3d 1102, 1106 (9th Cir. 2017). "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C § 405(g).

"Substantial evidence" is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Molina v. Astrue*, 674 F.3d 1104, 1121 (9th Cir. 2012). However, when determining whether substantial evidence exists, a reviewing court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion, and may not affirm simply by isolating a specific

quantum of supporting evidence." *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014).

Reversal of the Commissioner's decision is not warranted unless an error or omission is not harmless. *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008). The burden of showing an error is harmful generally falls upon the party appealing the ALJ's decision. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## ISSUES FOR REVIEW

(1) Whether the ALJ erred in weighing Plaintiff's subjective symptom claims?

(2) Whether the ALJ properly erred in weighing the expert medical evidence?

(3) Whether any error was harmful?

## DISCUSSION

### (1) Plaintiff's Subjective Symptom Claims

Plaintiff argues the ALJ improperly rejected his testimony regarding the severity of his symptoms. An ALJ engages in a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible. *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Id.* (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007)). In this analysis, the claimant is not required to show "that [his] impairment could reasonably be expected to cause the severity of the symptom [he] has alleged; [he] need only show that it could reasonably have caused some degree of that symptom." *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996). If the claimant satisfies the first step of this analysis, and there is no evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of [his] symptoms only by offering specific, clear and convincing reasons to do so." *Id.* at 1281.

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 6**

In this case, the ALJ found Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms. AR 19. However, the ALJ found Plaintiff's statements concerning the intensity, persistence and limiting effects of these symptoms were inconsistent with the objective medical evidence. AR 19.

*(a) The ALJ Offered Valid Reasons for Discrediting Plaintiff's Testimony*

The ALJ's reasoning satisfies the clear and convincing standard. The ALJ noted inconsistencies between Plaintiff's testimony and the record and noted reasons to discredit Plaintiff's testimony generally.

The ALJ points to medical reports that show that Plaintiff told Dr. Woolever he was performing certain tasks that in his hearing Plaintiff testified he could not do: such as camping in his trailer, including picking up and moving his camp; remodeling his home; and repairing his motor home and shopping. AR 21. Additionally, the ALJ pointed to a psychological report by Dr. Ronald Page where Plaintiff reported that he quit working not due to his own pain, but rather, due to the needs of caring for his wife and father. AR 21.

Further, the ALJ discounted Plaintiff's testimony because medical reports showed that Plaintiff reported no current heart pain and that his coronary artery disease was stable in 2017, contrary to Plaintiff's testimony. AR19. Plaintiff's past drug use and failure to stop smoking tabaco and marijuana, against the recommendation of his doctors, also contributed to the ALJ discrediting Mr. Lanning's pain and symptom persistence. AR 21.

The ALJ used the same reasoning to discount the third-party function report from Margo Lanning, Mr. Lanning's wife. Because Ms. Lanning claimed the same limitations for Mr. Lanning that the ALJ believed were inconsistent with the medical records this evidence was also appropriately given low weight. AR 22.

The Court finds the ALJ's reasons for discrediting Plaintiff's testimony, and the third party testimony, are valid and legally sufficient.

### (2) Medical Opinion Evidence

Plaintiff argues the ALJ failed to properly consider and weigh the medical opinion evidence. In the absence of a contrary opinion, a treating physician's opinion may not be rejected unless "clear and convincing" reasons are provided. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). If a treating physician's opinion is contradicted, it may be discounted only for "'specific and legitimate reasons' supported by substantial evidence in the record." *Id*. at 830 (quoting *Murray v. Heckler*, 722 F.2s 499, 502 (9th Cir. 1983). The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).

In this case, Plaintiff argues the ALJ improperly rejected the opinions of treating physicians Dr. Woolever and Dr. Henderson, and failed to address a reviewing physician, Dr. Palasi's, opinion at all.

### (a) Dr. Woolever

In May of 2015 Plaintiff's primary care physician Dr. Woolever's medical report stated that Plaintiff was "severely limited," and "unable to meet the demands of work". ECF 8-7 No. 16F at 8. This determination was made based off three diagnoses: coronary artery disease, COPD, and hip pain. ECF 8-7 No. 16F at 7. Dr. Woolever assigned severity ratings of 5 to Plaintiff's COPD and hip pain, and a severity rating of 4 to Plaintiff's coronary artery disease. *Id*. at 5. In his report Dr. Woolever states that this limitation on work activities would persist for 99 months with available medical treatment. *Id*. at 8. The ALJ gave little weight to this testimony, chiefly because of Dr. Woolever's more recent medical reports which reflect marked improvement after treatment. The 2015 evaluation was done prior

to Plaintiff's treatment for his heart problems, which were "resolved after stent placement." AR 23. Dr. Woolever, in a series of follow up visits in 2016, stated that the COPD and coronary artery disease are under control, even stating "no current symptoms that appear worrisome," in February of 2016. ECF 8-7, No. 15F at 32. This specific and legitimate reason for assigning low weight to Dr. Woolever's 2015 report was not error.

### (b) Dr. Henderson

In May of 2017 Dr. Richard Henderson's medical report stated that Plaintiff was unable to work for a period of three months as he was recovering from hip surgery. ECF 8-7, No. 16F at 2. The ALJ gave little weight to this assessment as it related to Plaintiff's ability to work, because the 3-month time period did not constitute a long enough period of time to qualify as a disability and Plaintiff was expected to recover and be able to work after that three-month time period. AR 22. The ALJ gave a clear and convincing reasoning as to why Dr. Henderson's medical evidence was given little weight.

### (c) Dr. Palasi

Plaintiff argues that the ALJ erred by not addressing DSHS physician Dr. Palasi's medical evidence. An ALJ must consider prior medical evidence from state or federal agencies. "Administrative law judges are not required to adopt any prior administrative medical findings, but they must consider this evidence." 20 C.F.R. § 404.1513a(b)(1). The ALJ did not address Dr. Palasi's testimony and thus erred. AR 15. The Court must determine whether the error is harmless.

### (3) Harmless Error

Reversal of an SSA adjudication on account of error requires a determination of prejudice and the burden is on the party claiming the error to demonstrate not only that the error exists but also that the error affected both the procedural rights and

//

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 9**

substantial rights of the claiming party. *Ludwig,* 681 F.3d at 1054 (9th Cir. 2012). An error is harmless if "there remains substantial evidence supporting the ALJ's decision and the error "does not negate the validity of the ALJ's ultimate conclusion." *Molina*, 674 F.3d at 1115 (9th Cir. 2012).

In May of 2015, Dr. Myrna Palasi performed an evaluation of Plaintiff's medical records, without examining Plaintiff. ECF 8-7, No.16F at 11. Dr. Palasi concluded that Plaintiff had a less than sedentary level of work, assigning a severity rating of 4 to Plaintiff's coronary artery disease, and a level of 5 to Plaintiff's COPD. ECF 8-7, No.16F at 15. Plaintiff's hip issues did not have a major impact on this disability incapacity determination in 2015. *Id.* Dr. Palasi's May of 2015 opinion on Plaintiff's COPD was based on her review of Dr. Woolever's 2015 report, which the ALJ appropriately gave low weight in light of the 2016 follow-up.

In May of 2017, Dr. Palasi again reviewed the medical reports from Dr. Woolever from May of 2015, Dr. Richard Henderson from May of 2017, and other medical documents from Providence St. Mary Medical Center from March of 2017. *Id.* Dr. Palasi's evaluation concluded that Plaintiff was unable to perform activities at heavy, medium, light and sedentary exertion levels. *Id.* at 8. Dr. Palasi concluded the highest level of work Plaintiff could perform was "less than sedentary." *Id.* In the 2017 report Dr. Palasi gave a severity rating of 2 to both Plaintiff's COPD and coronary artery disease and a severity level of 5 to Plaintiff's hip issues. *Id.* at 9. Again, Dr. Palasi's determination of Plaintiff's COPD and coronary artery disease were based upon Dr. Woolever's then-outdated 2015 report, and not the 2016 follow-up detailing Plaintiff's better-than-expected response to treatment. Likewise, Dr. Palasi's determination of Plaintiff's hip issues was based upon Dr. Henderson's opinion, which the ALJ appropriately gave low weight.

The ALJ gave low weight to the medical records which formed the basis of Dr. Palasi's review, and for the same reasons, would have given Dr. Palasi's opinions formed based upon those records low weight. The ALJ's failure to address Dr. Palasi's expert testimony would have made no difference in the outcome of the ALJ's opinion. The ALJ's error in failing to extend the reasons for giving low weight to Dr. Henderson and Woolever's reports to Dr. Palasi's review of those records was therefore harmless.

## CONCLUSION

Having reviewed the administrative record and the ALJ's findings, the Court finds the ALJ's decision is supported by substantial evidence and any errors were harmless.

Accordingly, **IT IS HEREBY ORDERED:**

1. Plaintiff's Motion for Summary Judgment, ECF No. 11, is **DENIED**.

2. Defendant's Motion for Summary Judgment, ECF No. 14, is **GRANTED**.

3. The decision denying benefits is **AFFIRMED.**

4. The District Court Executive is directed to enter judgment in favor of Defendant and against Plaintiff.

**IT IS SO ORDERED**. The District Court Clerk is hereby directed to enter this Order, provide copies to counsel, and **close the file**.

**DATED** this 30th day of September 2019.



Stanley A. Bastian
United States District Judge

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 11**